No. 59,538

STATE OF KANSAS, *Appellee,* v. MARK R. MAAS, *Appellant.*

(744 P.2d 1222)

Opinion filed October 30, 1987.

*John W. Nitcher,* of Riling, Norwood, Burkhead, Fairchild & Nitcher, of Lawrence, argued the cause, and *James L. Postma,* of the same firm, was with him on the briefs for appellant.

*James E. Flory,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Mark A. Knight,* assistant district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is a direct appeal by the defendant, Mark R. Maas, from jury convictions of aggravated kidnapping (K.S.A. 21-3421); rape (K.S.A. 1986 Supp. 21-3502[1] [a]); aggravated assault (K.S.A. 21-3410); terroristic threat (K.S.A. 1986 Supp. 21-3419); and criminal trespass (K.S.A. 21-3721). The charges against defendant arose out of two different incidents where defendant sexually assaulted, threatened, and kidnapped Ms. S,

his former girl friend. On October 8, 1985, defendant went to Lawrence High School and confronted Ms. S, stating that he wanted to talk with her. When she refused, defendant showed her a gun and told her if she did not go with him he would shoot them both. The couple got in her car and argued about their prior breakup. During this time, defendant continued threatening her with a pistol.

The second incident occurred on October 20, 1985. Defendant entered Ms. S's house uninvited, went to her bedroom, held a gun to her forehead, and forced her out to his car. He handcuffed her to the armrest of his car. Defendant then drove her to a rural area where he raped her. Early the next morning, the defendant removed the handcuffs and took his victim home.

These two incidents resulted in two criminal cases being filed against defendant, which were consolidated and tried together to a jury. There was not any real dispute as to what occurred, nor does defendant challenge the sufficiency of the evidence to support the verdicts. The only real factual issue in the case was whether defendant was insane at the time the offenses were committed and whether defendant's mental condition was of such a nature as to prevent him from having the specific intent necessary to commit certain offenses. The jury resolved these issues in favor of the prosecution and defendant appealed.

The first issue raised on the appeal is whether the trial court erred in denying defendant's pretrial motion for dismissal for failure to allow him a speedy trial pursuant to K.S.A. 22-3402. The record shows that the defendant was brought to trial 145 days after arraignment. Defendant contends that violated the 90-day limitation set forth in K.S.A. 22-3402. It was undisputed that the defendant was imprisoned during the entire period between arraignment and trial. The chronological schedule of events was as follows:

November 6, 1985     Defendant was arraigned in both cases consisting of a total of six counts. The cases were consolidated for trial by the court.

November 26, 1985     Defendant filed a motion for discovery.

December 5, 1985     Defendant filed a notice of intent to rely on the insanity defense pursuant to K.S.A. 22-3219.

| | |
|---|---|
| December 18, 1985 | State filed motion for reciprocal discovery pursuant to K.S.A. 22-3212(3). |
| December 31, 1985 | Defense counsel informed the court that experts had been employed by the defendant and that psychological evaluations had been commenced, but they were taking longer than anticipated to complete. The case had been set for trial by the court for January 13, 1986. The State moved for a continuance due to the insanity defense. Counsel for the defendant made no objections to the continuance but did not waive defendant's right to a speedy trial. The trial court granted the State's motion and continued the case for trial to February 10, 1986, because of the court's congested docket. |
| January 30, 1986 | State moved for an additional continuance because defendant's experts had not yet provided their reports as to defendant's insanity. The trial court granted the State's motion to continue over defendant's objection and continued the case to March 31, 1986 (145 days after arraignment). |
| February 7, 1986 | The reports of defendant's experts were furnished to the prosecutor and were filed. |
| February 24, 1986 | It appears that defendant refused to submit to an examination by the State's medical experts and, at an ex parte hearing, the trial court ordered defendant to submit to insanity examinations. Defendant objected to the order. |
| February 25, 1986 | Defendant was examined by the State's medical experts. |
| March 14, 1986 | The report of one of the State's experts was filed. |

| | |
|---|---|
| March 27, 1986 | The report of a second state's expert was filed. |
| March 28, 1986 | Defendant's motion to dismiss the case because of a claimed denial of a speedy trial under K.S.A. 22-3402 was denied by the trial court. |
| March 31, 1986 | Trial commenced and the defendant was subsequently convicted. |

Defendant contends that, on the basis of the record, the trial court violated his right to a speedy trial under K.S.A. 22-3402. K.S.A. 22-3401 and 22-3402 provide in part as follows:

"**22-3401. Time of trial.** All persons charged with crime shall be tried without unnecessary delay. Continuances may be granted to either party for good cause shown."

"**22-3402. Discharge of persons not brought promptly to trial.** (1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, *unless the delay shall happen as a result of the application or fault of the defendant,* or a continuance shall be ordered by the court under subsection (3).

. . . .

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

"(a) The defendant is incompetent to stand trial;

"(b) A proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section.

"(c) There is material evidence which is unavailable; that reasonable efforts have been made to procure such evidence; and that there are reasonable grounds to believe that such evidence can be obtained and trial commenced within the next succeeding ninety (90) days. Not more than one continuance may be granted the state on this ground, unless for good cause shown, where the original continuance was for less than ninety (90) days, and the trial is commenced within one hundred twenty (120) days from the original trial date;

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

The defendant in his brief correctly states that the right to a speedy trial is guaranteed by that statute. *State v. McQuillen*, 236 Kan. 161, 165, 689 P.2d 822 (1984).

This case does not involve the issue of defendant's compe-

tency to stand trial. The defendant correctly takes the position that the burden of bringing an accused to trial within the allotted time is entirely on the State, and defendant is not required to take any affirmative action to see that his right is observed. *State v. Bean*, 236 Kan. 389, 391, 691 P.2d 30 (1984).

Defendant concedes that the first continuance received by the State was permissible under K.S.A. 22-3402(3)(d) which allows one 30-day continuance because of a crowded docket. However, the defendant argues the second continuance obtained by the State on December 31, 1985, should be charged against the State rather than against the defendant. The defendant's position is that the second continuance or delay was improperly charged against the defendant because the delay was not the result of defendant's application or fault as required by K.S.A. 22-3402(1). Defendant maintains that the mere filing of his notice of intent to rely on the insanity defense under K.S.A. 22-3219 was not an "application" because defendant did not take any affirmative action to actually delay the trial. Defendant argues that a notice of intent to rely on the defense of insanity merely informs or notifies the State that defendant may rely on the insanity defense at the trial. Defendant argues that it is only when the defendant actually files a motion with the court for an insanity evaluation under K.S.A. 22-3219(2) that defendant has made application for delay in going to trial. In *State v. Powell*, 215 Kan. 624, 625, 527 P.2d 1063 (1974), it was held that a defendant's motion for psychiatric evaluation was tantamount to a motion for continuance until the results of the examination were available to the State, and that a delay resulting from such a motion is the result of the defendant's application. See also *State v. Warren*, 224 Kan. 454, 580 P.2d 1336 (1978), holding that the delay resulting from a court-ordered psychiatric evaluation is to be charged to the defendant. Defendant contends that he never sought a court order for a psychiatric examination in this case and that those cases are not applicable.

The defendant next contends that the delay was improperly charged to him because it was not the result of his "fault" within the meaning of K.S.A. 22-3402. The State takes the position that the defendant was responsible for any delay in trial resulting from his filing a notice of intent to rely on the insanity defense.

In our judgment, the basic principle of law on this issue was determined in *State v. Topham*, 231 Kan. 167, 642 P.2d 986 (1982). In *Topham*, defendant appealed his conviction on two counts of first-degree murder. On September 18, 1980, the county attorney filed a motion to determine defendant's competency. On December 30, defendant was found to be competent to stand trial. On that same date, defendant filed a notice of intent to rely on the insanity defense, and a mental evaluation was ordered for defendant. On April 8, 1981, defendant moved to be discharged because the 90-day time limit under the speedy trial statute had expired. This court analyzed the speedy trial statute in light of K.S.A. 22-3219 to determine the responsibility for delay in trial resulting from the filing of a notice to rely on the insanity defense. This court stated:

"Section (1) of the statute requires that such notice be filed before trial and within 30 days after entry of a not guilty plea. Section (2) provides that a defendant filing such notice 'submits and consents to abide by such further orders' as the court may make relative to mental examination. It is anticipated that the filing of the notice triggers at least one mental examination on the question of insanity. Such determination relates to sanity or legal insanity at the time of the commission of the offense and is wholly separate and apart from any mental examinations relative to competency to stand trial. In the usual case, at least one side is dissatisfied with the results of the first sanity examination and seeks another medical opinion. Hence, a foreseeable consequence of filing a notice of intent to rely on the insanity defense is delay in the commencement of trial.

"We conclude that the filing of notice of intent to rely on the insanity defense, pursuant to K.S.A. 22-3219, operates as a waiver by said defendant of the requirements of the speedy trial statute (K.S.A. 22-3402) insofar as any such trial delay was reasonably occasioned by and attributable to the assertion of the insanity defense. In the case before us, 134 days elapsed between arraignment and the commencement of trial. Of such period, defendant was physically at the State Security Hospital at Larned for a court-ordered sanity examination for a period of 46 days. Subtraction of just this Larned time from the 134-day total results in defendant having gone to trial within the statutory 90-day period. There is no need to compute the number of other delays equally chargeable to the insanity defense or occasioned by the direct request of defendant." 231 Kan. at 169-70.

The defendant distinguishes *Topham* on the basis that, in the present case, defendant was voluntarily evaluated by his own psychiatrist with his own funds. We find this argument to be without merit. Because there is a presumption of sanity in a

criminal proceeding, the State is not required to introduce evidence of sanity until defendant introduces his evidence that he is insane. *State v. Lawton*, 241 Kan. 140, 142, 734 P.2d 1138 (1987). The prosecution has no reason to evaluate defendant until defendant's experts file their reports that defendant was insane at the time the offense occurred. In the present case, the State moved for reciprocal discovery on December 18, 1985. Trial was originally set for January 13, 1986. On December 31, 1985, defense counsel notified the court the defense experts had not completed their examinations. The prosecutor moved for a continuance because he had not yet received defendant's evaluations. At the State's request, the court continued the case for trial to February 10, 1986. On January 30, 1986, the State again moved for a continuance because the district attorney had not yet received defendant's evaluations. The trial court ordered the defendant to provide the evaluation reports within ten days and continued the trial until March 31, 1986, stating for the record as follows:

"THE COURT: I'm going to direct that all reports be furnished— Well, first of all, I'm going to grant the continuance. Obviously, the continuance is one which I don't think anyone is particularly eager in seeking or granting. By the same token, there needs to be rules of fair play to all sides, just not the defendant. And to ask the State to present the case where the burden of proof is on them when they have no idea as to what the reports indicate and, further, when the statutes—and I'm sure if the statute didn't address it, the case law would—that the State is entitled to review these reports in order for them to attempt to have their own experts review it to see if in fact they agree or disagree, that it would not be fair to the State to proceed without those reports.

"So, to that end, I'm going to grant the continuance. I'm going to direct that those reports and mental examinations be furnished to the State no later than two weeks from today's date. Now, if that extension would be—or that deadline would be extended if good cause could be shown why that should occur. But I feel that without those types of deadlines this case could go on indefinitely, and the Court would be at the whim of someone else's schedule, and that isn't the way the criminal justice system is to work. Priorities need to be established. This is an important matter. Mr. Maas is in custody, and the matter should get to trial. He's been in custody for a great length of time.

"To that end, I'm going to continue the matter and reset the trial—I said two weeks; I'm going to indicate 10 days—and I'm going to continue the trial to March the 31st, 1986.

"Again, the reason for the continuance is to allow the State sufficient time to review the reports by the defendant's experts and to have experts of their own to

review these particular reports and then to be ready for trial. And March the 31st seems to be that time period which would allow all this to happen and yet would not require the Court to continue several other matters which are pressing on the Court's docket. So I'm going to continue this case to March the 31st, 1986. It will remain as the number one case."

The defendant's two psychiatric evaluations were filed on February 7, 1986. Thereafter, the prosecutor sought to have the defendant evaluated by the State's medical experts. The record is not clear as to whether the defendant refused to be evaluated voluntarily. Nevertheless, on February 24, 1986, the State obtained an ex parte order requiring defendant to submit to an examination by the State's expert witnesses. The reports of the State's experts were filed by March 27, 1986. Based upon the undisputed evidence contained in the record, we have concluded that the delays occasioned by the psychiatric evaluations by both parties were reasonably attributable to the assertion of the insanity defense and properly chargeable against the defendant.

The trial court properly considered the factual circumstances, thus the period of delay from December 5, 1985, to March 27, 1986, was reasonably attributable to the assertion of the insanity defense in accordance with *State v. Topham*, 231 Kan. 167, Syl. ¶ 1. There was a period of 64 days from the time the notice of intent to rely on the insanity defense was filed until the defense evaluations were delivered to the prosecutor. When that period is deducted from the total delay period of 145 days, that alone was sufficient to satisfy the 90-day requirement of K.S.A. 22-3402. In considering the time period required by the State to have its experts complete their examinations as to the defendant's sanity, we wish to emphasize that the prosecutor has the duty to have the State's examinations accomplished with reasonable dispatch and without unreasonable delay. Any reasonable delay in obtaining such psychiatric examinations should be charged to the defendant. Under all the factual circumstances contained in the record, we have no hesitancy in holding that the trial court did not err in denying defendant's motion to dismiss based upon a claimed denial of speedy trial under K.S.A. 22-3402.

The second issue raised on the appeal is that the trial court

erred in failing to give the defendant's requested instruction on diminished capacity. The defendant argues that four of the charges against him were specific intent crimes. The medical experts who testified on behalf of both the State and the defense disagreed as to whether the defendant was legally insane, but agreed that the defendant was severely depressed at the time the offenses were committed.

Although the trial court refused to give an instruction on diminished capacity, it permitted defense counsel to argue to the jury that defendant's diminished capacity precluded the defendant from forming the specific intent required for certain crimes. The jury was fully instructed on the lesser included offenses.

This court's position on diminished capacity was discussed in depth in *State v. Jackson*, 238 Kan. 793, 714 P.2d 1368 (1986). In *Jackson*, it was held that evidence of diminished capacity is admissible for the limited purpose of negating specific intent, but that the trial court is not required to give an instruction on diminished capacity. In the present case, the district court gave the insanity defense instruction, but rejected the defendant's request for a diminished capacity instruction. It instructed the jury on all of the lesser included offenses involved in the specific intent crimes. We have concluded that the district court did not commit error in refusing to provide the jury with a diminished capacity instruction. Such a holding is entirely consistent with the rulings of this court in *State v. Jackson* and the other cases cited therein. However, a majority of the court is of the opinion that it would be better practice for the trial court to give an instruction on diminished capacity where such an instruction is reasonably necessary to inform the jury of the effect of a defendant's diminished capacity on the specific intent required for the crime charged. Until the Pattern Instruction Committee of the Judicial Council has provided such an instruction, an instruction in the following form would be appropriate: "Diminished mental capacity of the defendant not amounting to insanity is not a complete defense to a criminal charge, but when a particular intent or other state of mind is a necessary element of the offense charged, diminished mental capacity may be taken into

consideration in determining whether the accused was capable of forming the necessary specific intent or state of mind."

The third issue raised on the appeal is whether the trial court erred in issuing an ex parte order for the defendant to be examined by the State's medical experts pursuant to K.S.A. 22-3219 without giving the defendant notice of the motion and an opportunity to be heard. Defendant argues that the granting of such a motion without giving defendant an opportunity to be present and be heard violated Section 10 of the Kansas Bill of Rights which grants to an accused in a criminal prosecution the right to appear and defend in person or by counsel at each stage of the prosecution. Defendant maintains that the right to a hearing on the State's motion for an examination for an insanity evaluation is a crucial step in the proceedings which requires the presence of either the defendant or his counsel.

K.S.A. 22-3219(2) provides:

"A defendant who files a notice of intention to rely on the defense of insanity thereby submits and consents to abide by such further orders as the court may make requiring the mental examination of the defendant and designating the place of examination and the physician or physicians by whom such examination shall be made. No order of the court respecting a mental examination shall preclude the defendant from procuring at such defendant's own expense an examination by a physician of such defendant's own choosing. A defendant requesting a mental examination pursuant to K.S.A. 22-4508 may request a physician of such defendant's own choosing. The judge shall inquire as to the estimated cost for such examination and shall appoint the requested physician if such physician agrees to accept compensation in an amount in accordance with the compensation standards set by the board of supervisors of panels to aid indigent defendants. A report of each mental examination of the defendant shall be filed in the court and copies thereof shall be supplied to the defendant and the prosecuting attorney."

K.S.A. 22-3219(2) provides, without equivocation, that a defendant who files a notice of intent to rely on the defense of insanity thereby submits and consents to abide by such further orders as the court may make requiring the mental examination of the defendant and designating the place of examination and the physician or physicians by which such examination shall be made. The statute is clear. Furthermore, in this case the defendant's notice of intent to rely upon the defense of insanity contains the following language in the second paragraph, "The Defendant submits and consents to abide by such further orders as the Court may make requiring further mental examination of the

Defendant and designating the place of examination, and the physician or physicians by whom such examinations shall be made." Under the circumstances, the defendant cannot now be heard to complain regarding the court's order that he be examined by the State's experts.

For the reasons set forth above, the judgment of the district court is affirmed.