No. 99,655

STATE OF KANSAS, *Appellee*, v. CHARLES E. SMITH, *Appellant*.

(247 P.3d 676)

Opinion filed February 11, 2011.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Nicole Romine*, assistant district attorney, argued the cause, and *Mark A. Simpson*, assistant district attorney, *Charles E. Branson*, district attorney, and *Steve Six*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Charles E. Smith appealed his robbery conviction, based in part on an allegation that the district court had abused its discretion in denying his motion for the appointment of new counsel. A majority of the Court of Appeals panel agreed with Smith and reversed and remanded the case for a new trial. This court granted the State's petition for review of that decision. We affirm the Court of Appeals' reversal.

## FACTUAL OVERVIEW

Smith was charged with the aggravated robbery of a convenience store clerk, Ryan Harrold. Harrold picked Smith out of a line-up and positively identified Smith as the robber at trial. The robber's image was captured on the store's surveillance videotape, albeit the picture quality is somewhat grainy. The State introduced the videotape into evidence at trial. Additionally, the State was permitted to elicit the opinion testimony that the person depicted in the surveillance videotape was Smith from four witnesses: two law enforcement officers; Stephen Edwards, defendant's friend; and Rufus Smith, defendant's brother. Ultimately, the jury convicted Smith of simple robbery.

The district court ruling challenged on appeal occurred prior to trial. Smith wanted to be appointed new counsel, claiming an irreconcilable conflict with his attorney, James Rumsey. Rumsey filed a motion to withdraw as counsel. The court heard the motion in chambers. After excusing the prosecutor, at defense counsel's request, the following exchange occurred among Rumsey, the court, and the defendant:

"THE COURT: This is State vs. Charles E. Smith, 06 CR 2174. Go ahead, Mr. Rumsey.

"MR. RUMSEY: Okay. There is a surveillance video in this case that was taken continuously during the robbery at the Presto Convenience Store and there are

several views of the face of the person that committed that robbery. I have seen it more times than I can count. There is no doubt that it is the face of the defendant. He denies that it's his face and wants me to put on evidence that would tend to suggest that he was physically infirmed and unable to perform the robbery and that he had no motive to commit the robbery because he had a job, although he was, at the time—he had been off the job with a Workers' Compensation claim. He had received some benefits. My problem with doing that is that I would know that that evidence would be false and I have tried to explain to him in writing and orally on numerous occasions that I can't do those kinds of things, and he takes that to mean that I am refusing to represent him or can't represent him, and I have explained to him that I still have the ability to cross examine the State's witnesses and make the State prove beyond a reasonable doubt that he is guilty. I just can't participate in putting on evidence that I know would be fraudulent. He asked me then to file a motion to withdraw. This came up last Thursday.

"THE COURT: Mr. Smith, is that your position?

"DEFENDANT SMITH: Yes, sir. Your Honor, it is my opinion that if Mr. Rumsey feels this way, you know, I believe due process law, a person is innocent until proven guilty and he got to feel the way he wants to feel, but at the same time, I am saying that is not me, and he being my attorney, he should be able to defend me to his full capability. My concern is how would he have a closing argument, you know, if it came to that. If he is thinking I am guilty, you know, before I go to trial, what is the point of him being my lawyer? I need a lawyer that is, as I said—if I have got evidence that is in my behalf and he don't want to put that evidence on because he feels like I am already guilty, then I don't see no—

"THE COURT: Well, Mr. Smith, no matter who I would appoint, any lawyer that the Court appoints is bound to follow rules that apply to lawyers and what evidence they can present and not present. No lawyer can present evidence that he feels is false. Knowingly making false statements to the Court can cause severe problems. Your objection would apply to any lawyer that I would appoint for you, so if that is the only reason you are seeking his removal, I am not going to approve it because he will certainly present what evidence he can in your benefit. Frequently, lawyers represent people that they feel are guilty, but that has nothing to do with whether or not the jury finds a person guilty. The burden is on the State to prove that you are guilty, so I am going to deny the motion and we will take up whether or not we can proceed to trial, I guess, in the courtroom with Mr. Krug.

"MR. RUMSEY: Okay. Thanks."

On appeal, Smith claimed the district court abused its discretion by refusing to appoint new counsel who would put on the evidence Smith wanted to present. The State countered that any attorney viewing the videotape would necessarily see that it was Smith who

robbed the store and such "knowledge would prevent all attorneys from presenting the evidence Smith wanted presented."

The Court of Appeals majority noted that the State did not challenge the existence or truth of the evidence Smith wanted to present. Rather, the State was asserting that a defense counsel's knowledge that his or her client is guilty precludes that attorney from presenting any evidence which might exonerate the defendant. In the State's view, any attorney viewing the videotape would have identified Smith and, therefore, any attorney would have had the same conflict as Rumsey, *i.e.*, an ethical duty to refrain from proffering any evidence which might be exculpatory. The Court of Appeals majority then found that the district court's acceptance of the State's argument was based on a "hasty generalization," because it does not logically follow that all attorneys would view the videotape in the same way as Rumsey, *i.e.*, another attorney might not identify Smith as the robber in the videotape. *State v. Smith*, 42 Kan. App. 2d 344, 350, 212 P.3d 232 (2009). Therefore, the majority found that the district court's refusal to replace counsel denied Smith the opportunity to present relevant evidence in his defense and that his conviction should be reversed and the matter remanded for a new trial. 42 Kan. App. 2d at 353.

The Court of Appeals dissent interpreted Rumsey's remarks differently, believing that the attorney was simply refusing to present evidence that was untrue or to create evidence which did not actually exist. Accordingly, the dissent found that the same ethical dilemma would exist for any attorney the court might appoint. 42 Kan. App. 2d at 354-55. Alternatively, the dissent was persuaded by the strength of the State's case against Smith and by the vigorous manner in which Rumsey cross-examined the State's witnesses.

## APPOINTMENT OF NEW COUNSEL

In requesting review, the State argues that the Court of Appeals majority applied the incorrect standard of review and that the decision will make it nearly impossible for a defense attorney to ethically represent his or her client. Moreover, the State contends that the district court did not abuse its discretion in refusing to appoint

another attorney, who would have faced the same conflict as Rumsey.

## A.  *Standard of Review*

" 'A trial court's refusal to appoint new trial counsel is reviewed using an abuse of discretion standard. Judicial discretion is abused when the district court's action is arbitrary, fanciful, or unreasonable. The test for abuse of judicial discretion is whether any reasonable person would take the view adopted by the district court.' " *State v. Crum*, 286 Kan. 145, 158, 184 P.3d 222 (2008) (citing *State v. Jasper*, 269 Kan. 649, 653, 8 P.3d 708 [2000]).

## B.  *Analysis*

" 'To warrant the appointment of new trial counsel, a defendant must show "justifiable dissatisfaction" with his or her appointed counsel. "Justifiable dissatisfaction" may be demonstrated by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney.' " *Crum*, 286 Kan. at 158 (quoting *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 [2006]); *Jasper*, 269 Kan. at 654. However, when the defendant's dissatisfaction emanates from a complaint that cannot be remedied or resolved by the appointment of new counsel, *i.e.*, replacement counsel would encounter the same conflict or dilemma, the defendant has not shown the requisite justifiable dissatisfaction. See *State v. Jasper*, 269 Kan. at 654-55 (not justifiable dissatisfaction where trial counsel unable to locate favorable expert witness after diligent effort).

More specifically, if the attorney-client conflict arises from trial counsel's refusal to call a witness who has indicated an intention to provide false testimony, the defendant's dissatisfaction is not justifiable because any subsequently appointed attorney would be bound by the same ethical constraints. See *State v. Banks*, 216 Kan. 390, 393, 532 P.2d 1058 (1975). Accordingly, if the Court of Appeals dissent was correct in assessing the conflict in this case to be the attorney's refusal to present false evidence or create evidence which did not actually exist, then the district court's denial of the withdrawal motion was certainly not an abuse of discretion.

However, the attorney's presentation of the withdrawal motion suggests that the problem may not have been based upon the falsity

of the facts Smith wanted introduced. Those facts, *e.g.*, whether Smith suffered from a physical infirmity or whether he had income from a job or a workers compensation claim, were easily verifiable and apparently the attorney did have knowledge that not all of the facts were false because he related that Smith was receiving workers compensation benefits. Moreover, if the problem had been false facts, the attorney could have simply advised the court that his client wanted him to introduce false testimony and the matter could have been quickly resolved.

Instead, the defense attorney, Rumsey, commenced his presentation by explaining that he was convinced from viewing the videotape that his client was guilty. He then related that the evidence Smith wanted to introduce would create an inference that Smith lacked the motive and ability to commit the robbery. Finally, Rumsey declared that the problem was that Rumsey would know that Smith's evidence would be false or fraudulent. In context, the argument suggests that Rumsey believed that he could not introduce any evidence, even truthful facts, if that evidence might create an inference that Smith was not guilty, because Rumsey was convinced of Smith's guilt, *i.e.*, the *inference* created by the evidence would be false or fraudulent. The State makes that very argument on appeal, asserting that any attorney viewing the videotape would identify Smith as the robber and would thereby be precluded from presenting the evidence Smith wanted introduced.

The fundamental flaw in Rumsey's apparent withdrawal motion argument (and the State's position on appeal) is that it ignores the separation of duties in a criminal prosecution. "The lines of demarcation separating the duties of each of the players in a criminal trial are sacrosanct, *i.e.*, the prosecutor representing the people; the defense attorney representing the accused; the trial judge representing the interpreter of the law; and the jury representing the finder of facts." *State v. Kemble*, 291 Kan. 109, 238 P.3d 251, 260 (2010). If any of those lines are crossed, the criminal justice system is compromised.

Here, the jury, as factfinder and final arbiter of guilt, had the sole responsibility to view the videotape, to look at the defendant, to make a finding as to whether the person shown in the videotape

was the defendant, and, ultimately, to determine whether the defendant was guilty of robbery. Rumsey's duty as defense counsel was to advocate for his client, including the presentation of any truthful, relevant evidence that would assist in his client's defense. Rumsey exceeded the scope of his duties as defense counsel and invaded the province of the jury when he performed the fact-finding function of identifying the robber in the videotape as his client and, based thereon, made the determination that his client was guilty. Accordingly, if Rumsey's refusal to introduce evidence on Smith's behalf was based upon Rumsey's out-of-bounds determination of guilt, rather than on the falsity of the evidence, Smith's dissatisfaction was justified.

Furthermore, the impropriety of Rumsey usurping the jury's fact-finding role is not diminished by the fact that four witnesses identified Smith as the person in the videotape. Indeed, one might well question whether it was appropriate for any witness, other than the eyewitness, to render a lay opinion as to the identity of the person in the videotape. See *Lollis v. Superior Sales Co.*, 224 Kan. 251, 261, 580 P.2d 423 (1978) ("where the normal experience and qualifications of laymen jurors permit them to draw proper conclusions from given facts and circumstances, expert conclusions or opinions to be drawn from the facts and circumstances are inadmissible"). Likewise, the Court of Appeals' hasty generalization analysis is misplaced, because the opinion of any replacement counsel as to the identity of the person depicted in the videotape would be equally irrelevant to the performance of the defense counsel's function in the criminal proceedings.

The State urges us to afford the deference due a district court's ruling on the appointment of new counsel mandated by the abuse of discretion standard. However, that deference is appropriate only where the district court has properly identified the existing conflict between attorney and client. Here, the district court's ruling indicates that it perceived the problem to be that Smith wanted his attorney to present false evidence. As indicated, Rumsey's argument to the court was at least ambiguous as to whether the conflict was based on false evidence or on defense counsel's misconception of his role in the criminal proceedings. The fact that defense coun-

sel openly expressed his opinion that Smith was guilty should have alerted the court that the problem might be more fundamental than false evidence. Moreover, Smith advised the court that the conflict was caused by Rumsey's belief that Smith was guilty. As previously noted, defense counsel's refusal to present truthful evidence based upon the attorney's belief that his client was guilty would have presented a case of justifiable dissatisfaction. Accordingly, the court's failure to make further inquiry into the exact nature of the conflict when presented with defense counsel's admission that he was invading the province of the jury falls squarely within the parameters of our abuse of discretion standard. We must reverse and remand for a new trial with newly appointed counsel.

Reversed and remanded.

WILLIAM B. ELLIOTT, District Judge, assigned.